# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RICHARD WAYNE BOONE II,

     **Plaintiff**,

                                    **CASE NO. 06-14415**

**vs.**

                                    **HONORABLE DENISE PAGE HOOD**

TERRI FIGHTER, ET AL.,                      **MAGISTRATE JUDGE STEVEN D. PEPE**

     **Defendants**.

_____/

## REPORT AND RECOMMENDATION

Richard Wayne Boone II is a prisoner in the custody of the Michigan Department of Corrections (MDOC). On September 30, 2006, he filed this action under 42 U.S.C. § 1983 against several defendants in their official and individual capacities and an amended complaint on November 14, 2006 (Dkt. #7). Plaintiff claims violations of his civil rights, including deliberate indifference to his medical problems, refusal to allow him to practice his religion and retaliation. All pretrial matters were referred to the undersigned pursuant to 28 U.S.C. §636(b)(1)(A) and (B). Plaintiff's amended complaint lists 54 named defendants and another 14 "John Doe" and "Jane Doe" defendants. On November 14, 2006, the Court *sua sponte* dismissed five of the named defendants. The remaining defendants are the MDOC Defendants, represented by the office of the attorney general; the Medical Defendants, comprised of Defendants Marble, Kearney, Isaacs, Hutchinson and Corrective Medical Services, Inc.; Beth Davis; and Jonathan Altman. The Defendants have filed separate motions to dismiss for lack of exhaustion pursuant to Fed. R. Civ. P. 12(b)(6). Of Plaintiff's 54 grievances, 46 of the related § 1983 claims need to be dismissed because Plaintiff did not clear all of the restrictive hurdles imposed on him by 42 U.S.C. § 1997e of the Prison Litigation

Reform Act ("PLRA"). The § 1983 claims related to the remaining eight grievances should not be dismissed, either because of Defendants' failure to follow the PLRA guidelines or because Plaintiff exhausted his administrative remedies. For the reasons stated below, it is **RECOMMENDED** that the Defendants' motion be **GRANTED IN PART** and Plaintiff's complaint be **DISMISSED IN PART** for failure to exhaust his administrative remedies pursuant to 42 U.S.C. §1997e.

## I. LEGAL STANDARD

Under the Prisoner Litigation Reform Act, a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring an action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement. In *Jones v. Bock*,

127 S. Ct. 910 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints. It may still be raised as an affirmative defense by defendants.

## II.    ANALYSIS

At the time of the incidents which give rise to the present action, Plaintiff was incarcerated at Pine River Correctional Facility ("SPR"), Mid-Michigan Correctional Facility ("STF") and Boyer Road Correctional Facility ("OTF"), all part of the Michigan Department of Corrections ("MDOC"). Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. PD Preamble. These requirements are laid out in MDOC Policy Directive PD 03.02.130 (effective 12/19/03), Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

The Policy Directive first requires that, within two business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control. PD § R. If he is dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process. On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved. PD § T. This form must be filed with a designated Grievance Coordinator within five business days of the prisoner's informal attempt at resolution. PD § X.

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form. PD § DD. The Step II respondent is designated by the Policy Directive, such as the Parole Board Chairperson for grievances involving the Parole Board. If the

prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form. The Prisoner Affairs Section, on behalf of the MDOC Director, is the respondent for Step III appeals.

A prisoner who files an "excessive number of grievances which are frivolous, vague, duplicative [or] raise non-grievable issues" may have his access to the grievance process limited. A prisoner placed on such "modified access" must be immediately notified of the decision. Throughout the modified access period, the prisoner can only obtain grievance forms through the Step I Grievance Coordinator. PD § JJ. The Grievance Coordinator will provide the forms only if she determines that the issue is grievable and otherwise meets the requirements of the Policy Directive. If a prisoner on modified access submits a grievance on a form not obtained through the Grievance Coordinator, that grievance will not be processed.

From January 12, 2006, until July 21, 2006, Plaintiff filed more than 50 grievances that were ultimately rejected for being untimely, duplicative or raising non-grievable issues.[1] Plaintiff attached these rejected grievances to his complaint, asserting that he exhausted the administrative remedies for each one as set out by the Policy Directive. A discussion of each grievance follows, categorized by those that are dismissed for failure to make an informal attempt at resolution, failure to timely file, untimely access to modified grievance process, duplicative issues, multiple unrelated issues, non-grievable issues, modified access violations, and vagueness. There follows those claims and related grievances that should not be dismissed for Defendants' failures to comply with the prison grievance procedures.

---

[1] Because of the large number of improperly filed grievances, Plaintiff was placed on modified access for 90 days, from April 17, 2006, until July 15, 2006.

*Grievances Dismissed for Failure to Make an Informal Attempt at Resolution*

The Policy Directive provides that: "In an effort to resolve grievable issues as soon as possible, prior to submitting a written grievance, the grievant *shall* attempt to resolve the issue *with the staff member involved* within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control. . . ." PD § R (emphasis added). Thus, a prisoner must attempt to communicate with the prison official involved in his complaint before he can file a grievance at Step I. The following grievances should be dismissed for Plaintiff's failure to discuss the grievable issue with the prison official involved prior to submitting his written complaint to prison authorities.

1.  <u>STF 06-01-00091-12F</u>: Plaintiff filed this grievance on January 12, 2006, claiming that his prescription medication was not in stock on that date. Pl. Exh. 2m. He failed to attempt an informal resolution because he felt he "shouldn't have to." A mere feeling that a given policy is unfair does not excuse compliance.

2.  <u>STF 06-04-0374-08A</u>: Plaintiff filed this grievance on April 20, 2006, complaining of inaccuracies in his Parole Guidelines Scoresheet. Pl. Exh. 1v. He indicated he did not make any attempts to resolve the issue prior to submitting his written grievance because he was afraid of retaliation.

    While retaliation itself is outside of Plaintiff's control, fear does not prevent Plaintiff from attempting an informal resolution. If he were to suffer retaliation at the hands of prison officials, he would be with recourse. The Policy Directive provides prisoners rights in the case of retaliation. Section K states that: "A grievant shall not be penalized in any way for filing a grievance except as provided in this policy for misusing

5

the grievance process.  Staff shall avoid any action that gives the appearance of reprisal for using the grievance process . . . . If a grievant believes s/he has been subjected to act of reprisal, s/he may file a grievance."

Providing prisoners with the recourse to address retaliation gives them some control over the effects of retaliation, and thus fear of retaliation, without more, such as evidence of an imminent, significant and irreversible mode of retaliation, is not a sufficient excuse to bypass the informal resolution requirements.

3.    OTF 06-07-00453-28A: Plaintiff filed this grievance on July 2, 2006, claiming that Defendant Blunt violated a prison policy that a chronic care patient be seen by the Health Unit within two weeks of his arrival at the facility.  Pl. Exh. 2n.  Plaintiff neither made an attempt at informal resolution nor pointed to any reason for this failure.

***Grievances Dismissed for Untimeliness***

The Policy Directive requires a prisoner to comply with certain deadlines in order to exhaust his administrative deadlines.  An informal attempt at resolution must be made within two business days of the prisoner's first becoming aware of a grievable issue.  PD § R.  The Step I form must be filed within five business days of the informal attempt; if the prisoner is dissatisfied with the Step I response, he has only five business days after receiving the response to obtain an appeal form and another five days to file a Step II appeal.  PD §§ X, DD.  A prisoner has 10 business days after receiving the Step II response to file a Step III appeal.  PD § HH.  Because the informal attempt must be made no later than two business days after the prisoner *first becomes aware* of an issue, whether or not an issue is ongoing makes no difference in the application of the deadlines.  A prisoner cannot excuse a delay beginning the grievance procedures by calling

the issue "ongoing."

A grievance submitted beyond the time frames established by the Policy Directive will be rejected unless "there is a valid reason for the delay; e.g. transfer." PD § G(4). If a prisoner does not comply with these deadlines, he has not exhausted his administrative remedies.[2] *Woodford*, 126 S. Ct. at 2386.

The following grievances are dismissed for failure to follow the Policy Directive's time frames:

4.   STF 06-02-0138-12D2: Plaintiff completed this grievance on February 5, 2006, and it was received at Step I on February 13, 2006. Pl. Exh. 2c. Naming "the Facility (warden, etc.), Health Care Manager, BCHS Chief Medical Officer, and CMS," Plaintiff grieved that he was denied a doctor visit on December 28, 2005; at the time, he stated he was suffering from constant hip pain and inability to sleep. He also complained that he was denied Celebrex, although the medication was approved by the Pain Management Clinic. After

---

[2] Plaintiff repeatedly argued in his grievances that he did not have to comply with the Policy Directive's time frames, citing as support *Thomas v. Woolum*, 37 F.3d 720 (6th Cir. 2003), which stated:

> The exhaustion requirement is a 'termination' requirement, requiring a petitioner to pursue administrative remedies as far as they exist. So long as a prisoner meets this requirement, a federal claim will not be barred by the plaintiff's failure to comply with a state prison's internal procedural requirements. . . . [The exhaustion requirement] is not . . . designed to permit state administrative timelines to handcuff the federal courts in adjudicating cases involving important federal rights.

*Id*. at 725-26. *Thomas,* however, was overruled by the Supreme Court in *Woodford*, 126 S. Ct. 2378, 2386 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). Plaintiff's argument therefore fails, even to the extent his grievances were filed prior to the *Woodford* decision. *See Irving v. Kelly*, No. 06-11569, 2007 U.S. Dist. LEXIS 25406 (E.D. Mich. April 5, 2007) (rejecting the plaintiff's argument that *Thomas* governed his case, and not *Woodford*, because *Woodford* was decided after he filed his grievances).

Plaintiff complained to officials on December 28, 2005, he was permitted to schedule an appointment with the doctor on January 26, 2006, but that appointment was cancelled.  He then made another attempt at resolution on January 31, 2006.  When that attempt failed, he filed the present grievance.

Plaintiff's first attempt at informal resolution on December 28, 2005 was successful: he was allowed to schedule a doctor's visit.  The cancellation of that appointment is irrelevant; if anything, it was a separate grievable issue.  Yet, Plaintiff's informal attempt at resolution came too late.  He did not complain until three business days following the cancellation – an untimely effort.

5. <u>SPR 06-03-00159-17A</u>: Plaintiff filed this grievance on February 25, 2006, complaining of retaliation by Defendants Fighter, Pung and Conerly for filing a grievance against Ms. Fighter.  Pl. Exh. 1w.  He indicated the date of the incident was June or July 2005 through November 7, 2005; the grievance then was filed some seven or eight months after he first became aware of the issue.

6. <u>STF 06-02-0252-28B</u>: Plaintiff filed this grievance on March 12, 2006, complaining that Defendant Teed and his superiors did not let Plaintiff have unimpeded access to healthcare by (1) not letting him see a doctor, (2) permitting physicians' assistants to perform duties outside the scope of their licenses; and (3) not following policy directives. Plaintiff also grieves that Defendant Teed (4) failed to properly review his file and (5) did not train his subordinates to deal with patients professionally.   Plaintiff cites the incident date as December 7, 2005, through March 12, 2006, but did not make an informal attempt at resolution until March 5, 2006.  The grievance also should be dismissed because it

contains multiple, unrelated issues.

7. <u>STF 06-04-0352-03A</u>: Plaintiff filed this grievance on April 2, 2006, alleging that overcrowding at STF had hindered his healthcare. Pl. Exh. 2l. He named the date of the incident as December 7, 2005.[3] Although the issue was ongoing, he was first aware of the effects of the overcrowding on December 7, 2005, four months before submitting his formal grievance. His grievance was thus untimely at Step I.

8. <u>SPR 06-03-00175-28E</u>: This grievance was filed on May 13, 2006. Pl. Exh. 6a. Plaintiff claimed that nearly a year prior, on May 9, 2005, Defendant Pung removed him from a tobacco-free housing unit for having matches which Plaintiff claimed were not his. As a result, Plaintiff suffered great throat pain. Yet, his year-long delay in filing this grievance made this grievance untimely at Step I.

9. <u>STF 06-05-0482-28F</u>: Plaintiff filed this grievance on May 14, 2006, alleging that on April 22, 2006, his mother visited him, but was denied entrance by the officer working the visitor's lobby because his mother was not wearing clothing that complied with prison standards. Pl. Exh. 7b. His mother left, changed her clothing and returned, but was not allowed inside again. Plaintiff attempted twice to informally resolve the issue, most recently on April 24, 2006, but failed. He then filed a grievance at Step I, but this was not done within five days of his informal resolution attempt and thus is untimely.

This grievance must also be dismissed because Plaintiff was on modified access when it was filed, but he failed to obtain the grievance form through the Grievance Coordinator.

---

[3]Plaintiff gave the incident date as December 7, 2006, but because the grievance was filed on April 2, 2006, it is assumed he meant December 7, 2005.

10. <u>JCS 06-06-00515-29Z</u>: Filed on June 20, 2006, this grievance complained that Plaintiff was improperly denied acceptance into the Jackson Cooper Street Residential Substance Abuse Treatment ("RSAT") program. Pl. Exh. 4i. Plaintiff applied to the RSAT program in December 2005. On May 11, 2006, he was informed in a letter from Warden Bruce Curtis that his application was denied because he had not met one of the eligibility criteria: he had not completed assaultive offender therapy. Plaintiff wrote to Defendant Curtis on May 11, 2006, indicating that he had completed the required therapy program. When he did not hear back, he filed this grievance on June 20, 2006. Because Plaintiff did not file his grievance at Step I within five days of his informal attempt at resolution (the letter to Warden Curtis) his grievance is untimely.

11. <u>OTF 06-07-00454-28E</u>: Plaintiff filed this grievance on July 21, 2006, alleging that on June 6, 2006, Defendant Marble refused him prescribed medication and a doctor's visit, and reduced the dosage of another medication. Pl. Exh. 2o. Also named in the grievance were Ms. Marble's supervisors. He made several undated attempts to informally resolve the issue by "kiting" the health care unit. A delay of six weeks between the incident and the Step I filing date is beyond the deadlines established by the Policy Directive.

12. <u>OTF 06-07-00473-28E</u>: On July 21, 2006, Plaintiff grieved that from May 9, 2006, through July 21, 2006, prisoners were unable to purchase toothbrushes approved by the American Dental Association. Pl. Exh. 11c. The toothbrushes they could purchase lasted only a couple of days before starting to deteriorate. According to his grievance, Plaintiff learned of the inadequate toothbrushes on May 9, 2006, yet did not file a grievance for more than two months.

13.    OTF 06-07-00457-28E: Plaintiff filed this grievance on July 21, 2006, complaining that

the tornado siren placed on the roof of the housing unit building was too loud and lasted

for too long, at least twenty minutes each time.  Pl. Exh. 11d, 11e.  He stated it was

activated at least once monthly for testing, and also during tornado warnings.  Plaintiff

gave the date of the incident as ongoing from May 9, 2006, until July 21, 2006, and stated

he attempted to informally resolve the issue by writing to Lieutenant Governor John

Cherry on July 10, 2006, and Governor Jennifer Granholm and MDOC Director Patricia

Caruso on July 12, 2006. Accepting Plaintiff's estimation that the siren was tested

monthly, his informal attempts at resolution were made untimely.  Further, they were

made to inappropriate individuals, because they were not the staff members involved in

installing and monitoring the sirens.

14.    OTF 06-08-0523-11G: On August 3, 2006, Plaintiff complained of being put on modified

access.  Pl. Exh. 8e.  He named in his grievance "any and all Jane/John Does that attached

their name and or signature to this grievance in any way shape or form" and listed the

incident date as July 21, 2006.  An informal attempt to resolve the issue was made on July

21, 2006 when Plaintiff spoke with a Grievance Coordinator.  Yet, he did not file the

formal grievance at Step I for 10 business days, beyond the five days limit in the Policy

Directive.

**The Untimely Modified Access Grievances**

Plaintiff was placed on modified access status from April 17, 2006, until July 15, 2006, for

the excessive number of grievances he filed.  On May 4, 2006, he met with the Grievance

Coordinator to discuss some future grievances that he wished to file.  The Grievance Coordinator

agreed to allow him to file seven grievances, and the Step I grievance forms were mailed to him that day. He received the forms on May 5, 2006. On May 8, 2006, he was transferred from Mid-Michigan Correctional Facility to Boyer Road Correctional Facility; he stated that he did not receive back his belongings, including the grievance forms, until May 11, 2006. Plaintiff did not file his allowed grievances until May 22, 2006; each was rejected as untimely. He stated in his Step II appeals that he required additional time to do more research and to come up with "available funds." *See, e.g.*, Pl. Exh. 1r.

Following his transfer, he had unrestricted access to the grievance forms for eleven calendar days and seven business days before he filed them. This is outside of the five business days permitted. Because Plaintiff did not comply with the Policy Directive's required time frames, the following grievances must be dismissed for failure to exhaust:

15. <u>STF 06-05-0479-28E:</u> This grievance complained of ongoing retaliation by the Michigan Parole Board. Pl. Exh. 1r.

16. <u>STF 06-05-0476-28E:</u> This grievance alleged that the Jewish Passover service was cancelled at the last minute by the Chaplain, although the Jehovah's Witnesses were allowed to have their service. Pl. Exh. 3c. Plaintiff states that his primary or designated religion is Judaism. *See*, *e.g.*, Pl. Exh. 3b.

17. <u>STF 06-05-0477-28E:</u> This grievance alleged that Defendants Ritz and Havelka refused to permit Plaintiff to miss work on the first and last days of the Feast of Unleavened Bread. Pl. Exh. 3m. Plaintiff grieved that "God says that [these days are] to be a Sabbath rest, you shall do no work."

18. <u>STF 06-05-0478-28E:</u> Plaintiff complained in this grievance that (1) he was put on

modified access without an opportunity for a hearing; (2) he was not given a valid reason or shown any evidence for the decision; and (3) he was not notified until April 19, 2006. Pl. Exh. 8c. This Court also notes that Plaintiff did not attempt to resolve the issue informally before he filed this grievance.

19. <u>STF 06-05-0475-28E</u>: This grievance alleged that Defendant Ritz did not follow prison procedures that would allow Plaintiff to send property out on a visit and then lied to Plaintiff about it. Pl. Exh. 9a. Further, he alleges that Defendant Ritz allowed prisoners living in a tobacco-free housing unit to purchase tobacco. Plaintiff's grievance would also be dismissed for containing multiple, unrelated issues.

***Grievances Dismissed as Duplicates***

If a grievance is a duplicate of a previously filed grievance, the Policy Directive states that it will be rejected. § PD G(1). The Policy Directive does not define "duplicate" and, to some extent, Plaintiff and Defendants interpret the term differently. Plaintiff feels that if he is injured, he should be permitted to file one grievance naming the prison official who harmed him, and a separate grievance naming that prison official's supervisor for failure to train and supervise his subordinate. Defendants disagree; their interpretation seems to be that because the same factual circumstances are present - because Plaintiff was only injured by one action (or inaction) - Plaintiff cannot separately name the supervisors of the prison official involved.

When two possible interpretations of a rule or regulation are present, courts give deference to the interpretation of the agency administering the rule. *See, e.g.*, *Gerber v. Hickman*, 291 F. 3d. 617, 626 (9th Cir. 2003) ("Warden's interpretation of the regulation is entitled to deference."). Thus, because Defendant's interpretation is not unreasonable, it is

concluded that "duplicate" refers to what actually harmed Plaintiff, and not to any named party's specific role in the incident.

20. <u>STF 06-03-0321-28A</u>: Plaintiff filed this grievance on March 27, 2006, claiming that Defendant Thompson removed him from the Jewish service list because he would not convert to Christianity. Pl. Exh. 3k. This grievance is a duplicate of STF 06-03-0320-20A[4]. Although Plaintiff here alleged a reason for his removal from the list, what harmed him was still the removal itself.

21. <u>STF 06-03-0322-28A</u>: Plaintiff filed this grievance on March 28, 2006, alleging that the prison chaplain, Defendant Thompson, improperly removed him from the Jewish service list. Pl. Exh. 3f. This, too, is a duplicate of STF 06-03-0320-20A.

22. <u>STF 06-04-0330-28A</u>

- and -

23. <u>STF-06-04-0331-28A</u>: Filed on March 30, 2006, these two grievances concerned Plaintiff's inability to obtain his prescriptions for Ultram, Cortizone and Tylenol. The first named Defendant Teed, alleging he failed to supervise his subordinates, Pl. Exh. 2i; the second named Defendant Davis, alleging, she, too, failed to supervise her subordinates. Pl. Exh. 2j. The grievances were denied at all three steps for being duplicates of a prior grievance, 06-03-0323-12E. Plaintiff does not deny that he filed grievance 06-03-0323-12E on this issue. Because what allegedly harmed Plaintiff was his inability to receive prescribed medications, the roles of Defendants Teed and Davis have no bearing.

---

[4] As discussed later in this Report, the MDOC Defendants acknowledge that Plaintiff has exhausted his administrative remedies for STF 06-03-0320-20A.

24.     STF 06-04-0334-28A

- and -

25.     STF-06-04-0322-28A

- and -

26.     STF 06-04-0335-28A: These three grievances were filed on March 30, 2006; Plaintiff

        again cited his removal from the Jewish service list. The first, STF 06-04-0334-28A,

        claimed that Defendant Meager failed to train and supervise her subordinates, including

        Defendant Thompson, the prison chaplain. Pl. Exh. 3i. The second, STF-06-04-0332-

        28A, Pl. Exh. 3j, claimed that Defendant Laffler failed to train and supervise his

        subordinates, including Defendants Meager and Thompson. The third, STF 06-04-0335-

        28A, claimed that Defendant Olson failed to train and supervise his subordinate,

        Defendant Thompson. Pl. Exh. 3j. Because the same facts underlie all three grievances -

        Plaintiff's removal from the Jewish service list - these are duplicates of previous

        grievances.

27.     OTF 06-07-00488-28I

- and -

28.     OTF 06-07-00480-28E: Plaintiff filed these two grievances on July 21, 2006, both

        complaining that because his record inaccurately showed he had not completed the assault

        offender program, he was rejected from the RSAT program. Pl. Exh. 4h, 4j. Grievance

        JCS 06-06-00515-29Z previously addressed the same issue.


***Grievances Dismissed for Containing Multiple Unrelated Issues***

15

If a grievance contains multiple, unrelated issues, the Policy Directive provides that it will be rejected. PD § G(1). Thus, a prisoner may not use one grievance form to list out all the different complaints he may have. A grievance must give the facility fair notice of the alleged misconduct so that it has the chance to provide a remedy. *See, e.g.*, *Bell v. Konteh*, 450 F. 3d 651, 654 (6th Cir. 2006). Listing in a single grievance multiple issues occurring in different units by different individuals diminishes the prison's opportunity to correct the problem. The following grievances are rejected for containing multiple, unrelated issues:

29.    <u>STF 06-03-0256-12D</u>: This grievance was filed on March 13, 2006, and complained that on January 30, 2005, Defendant Kearney refused to see Plaintiff or prescribe Celebrex. Pl. Exh. 2g. Plaintiff also grieved that he was denied a new mattress to sleep on. In addition to the grievance being clearly untimely, it contained multiple, unrelated issues. The department that could resolve the Celebrex issue (Health Care) was not the same department that could resolve the mattress complaint (Housing).

30.    <u>OTF 06-07-00421-28C</u>: In this grievance filed on July 10, 2006, Plaintiff alleged several failings by the health care system at three different facilities, Boyer Road, Pine Ridge, and Mid-Michigan. Pl. Exh. 2e. He named multiple officials at each facility in the grievance. Although he argues that the grievance dealt with one issue, improper health care, he did not give each of the different facilities a fair chance to correct the alleged misconduct. Submitting a grievance to Boyer Road containing incidents that occurred while Plaintiff was at Pine Ridge, for example, does not give Pine Ridge notice and an opportunity to remedy the situation.

31.    <u>OTF 06-07-00482-28E</u>: On July 21, 2006, Plaintiff filed this complaint alleging ongoing

retaliation in a number of ways, including: (1) The mailing of his college application was delayed; (2) He was transferred to a different facility; (3) Certain grievances were not processed; (4) He was not allowed his guitar and accessories; (5) He was not allowed to keep Passover; and (6) He was prevented from sending out property on a visit.  Pl. Exh. 5b.  The grievance named many different defendants at different facilities and thus did not give each facility a fair opportunity to respond to and remedy the alleged misconduct.

***Grievances Dismissed for Complaining of Non-Grievable Issues***

According to the Policy Directive, "grievances may be submitted regarding alleged *violations* of policy or procedure or unsatisfactory conditions of confinement which *directly affect* the grievant." PD § E (emphasis added).  Two types of complaints are considered non-grievable.  First, "a grievant may not grieve the *content* of policy or procedure; such grievances shall be rejected by the grievance coordinator."  In other words, a prisoner can grieve that a prison official failed to comply with a required procedure, and that this failure harmed him, but he cannot grieve that the required procedure itself harmed him.  Though the grievance process is an inappropriate channel, a prisoner upset with the content of a policy has another outlet to which he may turn; the Policy Directive provides that general complaints about prison policies and procedures may be directed to the Warden's Forum.  Second, the rejection of a grievance is also a non-grievable issue.  The Policy Directive states that "[a] grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy.  A new grievance shall not be filed regarding the rejection." PD § I.

The following grievances are dismissed for complaining about non-grievable issues:

32.     OTF 06-07-00478-27B: Plaintiff filed this grievance on July 21, 2006, alleging that on

several occasions he was not allowed more than 10 metered envelopes, violating his First Amendment rights to free association. Pl. Exh. 10a, 10g. Prison policy limits the number of envelopes a prisoner may submit to 10, OP DRF 04.02.130, and thus this is a non-grievable issue.

33.     OTF 06-07-00471-27B: This grievance was filed on July 21, 2006, and complained of a prison policy, that, in Plaintiff's words, allowed the Warden to run the prison as he saw fit. Pl. Exh. 10c.

34.     OTF-06-07-00467-27B: This grievance was filed on July 21, 2006, and complained of a prison policy that permitted prisoners to receive retail catalogs through the mail only from approved vendors. Pl. Exh. 10d.

35.     OTF 06-07-00468-28I: This grievance was filed on July 21, 2006, and complained that MDOC required prisoners to complete a declaration of religion on a "Religious Preference Form" to be added to a certain religious service. Pl. Exh. 10e.

36.     OTF 06-07-00470-27D: This grievance was filed on July 21, 2006, and argued that the prison has a policy of depriving inmates legal representation at hearings including a major misconduct ticket hearing or a parole hearing, and that this policy violated Plaintiff's due process rights at his November 7, 2005, hearing. Pl. Exh. 10f.

***Grievances Dismissed for Modified Access Violations***

The Policy Directive provides that a prisoner who abuses the grievance process by filing an excessive number of inappropriate grievances may be placed on modified access; he then can only submit grievances on forms supplied by the Grievance Coordinator. PD § JJ, MM. The Grievance Coordinator thus can ensure that the prisoner is following the Policy Directive

requirements, but she must provide the grievance forms if those requirements are met. PD § MM.

Plaintiff was placed on modified access from April 17, 2006 until July 15, 2006, but he failed to comply consistently with the modified access limitations. Plaintiff argued that these limitations were unconstitutional because if he is required to exhaust his administrative remedies before filing a § 1983 suit, he cannot constitutionally be prevented from doing so by modified access to the administrative remedies process. This argument fails. The Sixth Circuit has held that prisoners do not have a constitutional right to a grievance process.[5]

In *Walker v. Mich. Dept. of Corr.*, 128 Fed. Appx. 441 (6th Cir. 2005), the plaintiff argued that placement on modified access limited his access to the courts in violation of his First Amendment right to petition for redress. The Court disagreed:

> [P]lacement on modified access status does not impinge upon a prisoner's ability to file either meritorious grievances in prison or actions in federal court. First, the fact that Walker's grievances must first be screened by a grievance officer prior to their consideration in the normal grievance process does not mean that he is unable to file non-frivolous grievances, nor that they will not be properly heard. If, of course, a grievance officer improperly dismissed a non-frivolous claim filed by Walker, Walker could then petition a court for redress, but that has not happened here. Outside of such a situation, however, the modified access status process does not in any way impede Walker's ability to file non-frivolous grievances, and thus his First Amendment rights with regard to access to the prison grievance procedures have not been violated.

*Id.* at 446. Thus, if there is no access to a grievance process - either because none exists for all inmates or because a specific inmate on modified access is denied the right to proceed with a non-frivolous grievance - then such a prisoner can proceed with a § 1983 action because he has exhausted "such administrative remedies as are available" which is all the PRLA requires.

Plaintiff here was required to obtain his grievance forms from the Grievance Coordinator,

---

[5] *See*, *e.g.*, *Miller v. Haines*, No. 97-3416, 1998 U.S. App. LEXIS 18239, at *3 (6th Cir., Aug. 3, 1998); *Wynn v. Wolf*, No. 93-2411, U.S. App. LEXIS 6593, at *3 (6th Cir., Mar. 28, 1994);

who would supply the forms if she determined that Plaintiff's complaints had merit. Plaintiff did not comply with this pre-screening procedure. If indeed his grievances had merit, and if he had complied with the procedure, but was still denied the grievance forms, he would have been able to proceed with his § 1983 action. Yet, because he failed to follow the procedures that were available to him - and required of him - the following grievances are dismissed:

37. <u>STF 06-05-0481-28F</u>: Plaintiff filed this grievance on May 12, 2006, complaining that Defendant Lafler violated Plaintiff's religious freedom by refusing him his guitar to praise God and preventing him from participating in Passover. Pl. Exh. 3l. Plaintiff did not obtain the Step I grievance form through the Grievance Coordinator.

38. <u>STF 06-05-0480-28F</u>: Plaintiff grieved on May 13, 2006, that his transfer to a different facility was in retaliation for filing a civil rights complaint in district court. Pl. Exh. 5a. He complained that the new facility refused to allow him to have accessories for his guitar. Plaintiff did not obtain the grievance form through the Grievance Coordinator.

39. <u>STF 06-05-0483-28F</u>: Plaintiff filed this grievance on May 22, 2006, alleging that Warden Conerly failed to supervise those of his subordinates who were retaliating against Plaintiff. Pl. Exh. 1t. The grievance form was not obtained from the Grievance Coordinator.

### Grievances Dismissed for Vagueness

A grievance may be rejected if it is vague. PD § G(1). Prisoners may only submit grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which *directly affect the grievant.*" PD § E (emphasis added). Further, prisoners must include in their grievances "the *fact*s involving the issue being grieved (i.e. who, what, when, where, why, how)." PD § T. If a grievance does not describe how the prisoner suffered

injuries, and by whom or what, it will be rejected for vagueness.

The following grievances are dismissed for being vague:

40.   <u>OTF 06-07-00425-28C</u>: In this grievance, filed on July 10, 2006, Plaintiff complained about several issues relating to library access and his abilities to prepare his court documents.  Pl. Exh. 10b.  These include: (1) Plaintiff was denied access to the law library on May 11, 2006, and for four to five weeks thereafter; (2) Prisoners could not get hand passes from correction officers to go to the law library, even when legal deadlines were approaching; (3) Prisoners had to record every book they reviewed in the law library; (4) Some prisoners had experienced retaliation because of attempts to access the law library, including being transferred out of the facility for causing extra work for the prison officials who must send out their legal mail; and (5) Plaintiff was unable to access the big stapler during his evening call-outs.  Plaintiff's grievance was denied at all three steps for containing multiple, unrelated issues; Plaintiff argued in his Step II appeal that it contained only one issue, the operation of the law library.  While Plaintiff's grievance arguably may relate to a single issue (impeded access to the legal system, and not the operation of the law library), it fails to state *how* he, in particular, was affected by the alleged prison officials' behavior.  His grievance is therefore vague for failure to include a factual description of how he was affected by these issues.

41.   <u>OTF 06-07-00485-28B</u>: Plaintiff filed this grievance on July 20, 2006, alleging the ongoing issue of Defendant Marble practicing outside the scope of her nursing license by imitating and acting as a physician's assistant and not practicing under a supervising physician.  Pl. Exh. 2q.  Plaintiff names Ms. Marble, her supervisor and the MDOC

Director, Patricia Caruso, in his grievance. If indeed Ms. Marble was acting outside the scope of her nursing license, she was violating the MDOC Health Services Policy Directive, 03.04.100 (effective February 14, 2005). Yet, Plaintiff must still demonstrate that he has suffered harm because of the violation. PD § E. Although Plaintiff attached a medicine label from a drug prescribed by Ms. Marble, he did not indicate that the drug was improperly prescribed or caused him injury.

***Grievances Dismissed for Miscellaneous Reasons***

The following grievances are dismissed for the reasons cited:

42. <u>STF 05-12-0721-20Z</u>: Plaintiff filed this grievance on December 28, 2005, alleging that Defendant Thompson refused to put on the Jewish service list. Pl. Exh. 3a. He was then placed on this list. Plaintiff acknowledged on January 4, 2006, that the grievance was resolved. He does not state he was dissatisfied with the result. Pl. Compl. ¶ 46. He thus has nothing to appeal.

43. <u>OTF 06-06-00362-15A</u>: Plaintiff filed this grievance on June 13, 2006, complaining that he was not allowed to receive a Barron's Law Dictionary that his mother ordered for him on Amazon.com. In his complaint, Plaintiff alleged he appealed the grievance to Steps II and III, Pl. Compl. ¶ 80, but there is no evidence of this in the record. Further, Plaintiff received the book on July 21, 2006. This complaint is dismissed for failure to proceed through all three steps.

44. <u>OTF 06-07-00455-28E</u>: This grievance was filed on June 21, 2006, and alleged inadequate medical care and practices at OTF continuing since May 9, 2006. Pl. Exh. 2p. Among other issues, Plaintiff complained that nurses, and not physicians, make diagnoses and

prescribe medication and that prisoners must pay a $5.00 copayment each time they are seen by the Health Unit, an amount so large it forces them to choose between health care services and hygiene/personal products.

This grievance should be dismissed for multiple reasons. Plaintiff failed to make an informal attempt at resolution with the staff member involved; rather, he wrote letters to Governor Jennifer Granholm, Lieutenant Governor John Cherry, and MDOC Director Patricia Caruso. Second, the grievance was untimely. As noted above, a prisoner must begin the grievance process within two business days after becoming aware of an issue. According to his grievance, Plaintiff first learned of the health unit's requirements and procedures on May 9, 2006, but did not file his grievance for over a month. Third, the grievance contains multiple, unrelated issues. The copayment amount is not related to nurses prescribing medications. Fourth, the grievance contains non-grievable issues. The $5.00 copayment, for example, is authorized by MDOC Policy Directive, Prisoner Health Care Copayment 03.04.101 (effective December 8, 2003). Plaintiff did not allege he was charged more than the policy allowed, but that the policy charges too much. Finally, Plaintiff was on modified access when this grievance was filed but did not obtain the form through a Grievance Coordinator.

45. <u>OTF 06-07-00450-28C</u>: In this grievance, filed July 21, 2006, Plaintiff "incorporate[d] all issues and people in [his July 10, 2006] letter to Lt. Govern[o]r John Cherry [J]r." Pl. Exh. 11a. That letter is 15 pages long and contains more than 30 issues, ranging from the alleged errors on his Parole Eligibility Report to inadequate lighting and heat to high phone rates. This grievance was dismissed for two reasons. First, it contains multiple,

unrelated issues.  Clearly, phone charges are unrelated to errors in his file; his unhappiness with both does not bring them under the same umbrella.  Further, many of these issues were already grieved by Plaintiff and were rejected.  The rejection of a grievance is not a grievable issue. For these reasons, this grievance is dismissed.

46.    OTF 06-07-00489-28B: On July 21, 2006, Plaintiff filed this grievance which stated: "All the persons named and situation/violation alleged by Grievant has caused Grievant much emotional and mental distress. [Grievant] seek[s] monetary damages for the emotional and mental stress that was caused by all named individuals and all said allegations listed in the other grievances filed along with this one on 7-21-06." Pl. Exh. 11b.  At Step I, this grievance was rejected for vagueness.  At Steps II and III, it was rejected because it grieved the rejections Plaintiff received on 34 prior grievances.  Both reasons are cause for dismissal.  If Plaintiff is alleging a new situation causing him injury, he did not lay forth the facts of that situation.  If he is not alleging a new situation, then he is merely complaining about the responses he received on previous grievances.  This grievance was properly dismissed.

### *Grievances Not Dismissed*

### **Conceded by One or Both Defendant Groups to Have Been Exhausted**

It is undisputed that Plaintiff exhausted all administrative remedies for two of his grievances, SPR 05-1010-00487-16D, Pl. Exh. 1g, naming Defendant Fighter and concerning an error on Plaintiff's Parole Eligibility Report, and STF 06-03-0320-20A, Pl. Exh. 3e, alleging Chaplain Thompson improperly removed him from a Jewish religious service list.

The MDOC Defendants further agree with Plaintiff that he exhausted the remedies for two

additional grievances, STF 06-03-0323-12E, Pl. Exh. 2h, relating to prescription medications, and STF 06-03-0257-17Z, Pl. Exh. 2r, accusing Defendant Grahek of being rude and unprofessional. The Medical Defendants, Marble, Kearney, Isaacs, Hutchinson and Corrective Medical Services, Inc., disagree. Instead, they argue that STF 06-03-0323-12E was filed untimely, and should be dismissed. These defendants also note that STF 06-03-0257 named only Defendant Grahek, a nurse who is not represented by their counsel. Further analysis of these two grievances is therefore required.

47. STF 06-03-0257-17Z: Plaintiff filed this grievance on March 14, 2006. He complained that on that day, Defendant Grahek, a nurse in the Health Unit, was rude and unprofessional. To resolve the issue, he attempted to talk to Grahek, "but she wouldn't listen." Plaintiff then timely filed this grievance through all three steps. In all other respects, his grievance is proper. Grahek is a named defendant; her representation, or lack of representation, is of no moment. Thus, the Medical Defendants' request to dismiss this grievance is also denied.[6]

48. STF 06-03-0323-12E: This grievance was filed on March 26, 2006. Plaintiff complained that Defendant Kearney prescribed Ultram and a cortizone shot on March 17, 2006, but the order was not given to the nursing staff. Pl. Exh. 2h. As a result, Plaintiff did not receive Ultram until March 22, 2006, and the injection until April. He informally attempted three times to resolve the issue prior to filing his grievance. At Step II, the respondent acknowledged that Plaintiff was not given his medications on a timely basis

---

[6] Whether this complaint involves a constitutional issue over which this Court has jurisdiction is not addressed in this Report.

and indicated that the issue had "been reviewed administratively and processes have been reviewed to prevent recurrences of this problem." Plaintiff, dissatisfied with this response, appealed to Step III, but no Step III response is in the record.

Plaintiff exhausted his administrative remedies with respect to this grievance. The Medical Defendant's argument that he did not timely file at Step I is without merit; the Policy Directive indicates that the two-day deadline to attempt an informal resolution and the five-day deadline to file a grievance at Step I both refer to business days, and not calendar days. Thus, Plaintiff timely filed his grievance at Step I. Additionally, the lack of a response to Plaintiff's Step III appeal does not require a finding of non-exhaustion. It is not clear why MDOC did not respond to Plaintiff's final appeal. Nonetheless, Plaintiff performed each step that was required of him; MDOC's failure to comply with its own procedure at Step III does not negate Plaintiff's efforts. The Medical Defendants' request to dismiss this grievance should be denied.

## **Prison Officials' Failure to Comply with Procedures**

The Policy Directive requires that "time limitations shall be adhered to by the grievant and staff in all steps of the grievance process." PD § U. At Steps I and II, the designated respondent must reply within 15 days after receipt of the grievance. § Y. While there is no such specific deadline for the Step III respondent, the Policy Directive states that "the total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved in writing by the Grievance Coordinator or the Prisoner Affairs Section." PD § U.

Prison officials may not refuse to respond to a complaint at any step of the process in

order to prevent the prisoner from proceeding to the next step.  If the designated respondent does not reply to the grievance within the established time frames, the prisoner may take his grievance to the next step in the process.  Therefore, if a prisoner does not receive a timely response at Step I, he may request a Step II appeal form from the Grievance Coordinator "within five business days after the date the response is due, including any extensions." PD § DD.  If the prisoner does not receive a timely response at Step II, he may send a completed Step III grievance to the Prisoner Affairs Section "within ten business days after the date the response was due, including any extensions." PD § HH.  A prisoner thus cannot simply abandon the required procedures, claiming prison officials wouldn't permit him to continue.  Regardless of whether or not the prison officials respond to grievances as they are required to do, the prisoner must perform all steps required of him.  Yet, the failure of prison officials to respond to a Step III appeal does not mean that a grievance has not been exhausted. If the prisoner has filed a Step III appeal, and has complied with all other procedural requirements, he has exhausted his administrative remedies regardless of whether or not he receives a response to his Step III appeal.  There is nothing left for him to do.

49.     STF 06-03-0324-12Z: Plaintiff complained on March 20, 2006 that he was denied his Tylenol refill on March 14, 2006.  Pl. Exh. 2f.  He attempted to informally resolve the issue on March 14, 2006, by sending a kite.  His grievance was timely at Step I, but was rejected on April 13, 2006.  Plaintiff appealed to Step II, and the response indicated that the matter would be handled administratively.  Not satisfied with this response, Plaintiff appealed to Step III, but the record does not show the result of this appeal.

Defendants argue only that his grievance was untimely, but do not specify at which

step it was untimely.  Plaintiff timely filed his grievance at both Steps I and II.  Again, because the record does not indicate when he filed his Step III appeal, and in the lack of evidence to the contrary.  Resolving all reasonable inferences in Plaintiff's favor, as must be done on summary judgment, the Defendants fail in their affirmative defense burden of proof.

50.     <u>STF 06-03-0295-12E</u>: Plaintiff filed this grievance on March 22, 2006, complaining that, on March 21, 2006, Defendant Orth refused to give him his prescribed medication after he waited in line, and told him that she would call him out later to get it.  Pl. Exh. 2d.  When he did not hear from her, he tried to call her to informally resolve the issue, but was told that she had gone home for the day.  On April 14, 2006, his grievance was rejected.  Defendant Orth stated she told him to come back later, not that she would call him back when she was ready.  His Step II appeal was rejected on May 31, 2006. The record indicates he appealed to Step III, but did not receive a response, although one was due on June 20, 2006, 90 days following the Step I filing date.  PD § U.

Defendants argue that Plaintiff was untimely in his appeal to Step III, but do not provide any evidence.  The Step III appeal form does not have a space on which a prisoner can write the date.  All reasonable inferences must be drawn in favor of Plaintiff in a motion to dismiss.  *See, e.g.*, *Directv, Inc.  v.  Treesh*, 487 F.3d 471, 476 (6th Cir.  2007).  In the absence of any evidence to the contrary, therefore, it is assumed that Plaintiff filed his Step III grievance within the ten business days allowed.

**<u>Grievances Allowed For Other Reasons</u>**

51. <u>STF-06-04-0358-27Z</u>: On April 6, 2006, Plaintiff grieved that on March 23, 2006, he was prevented by Defendant Jackson from filing a Step II appeal on grievance STF 05-12-0721-20Z. Pl. Exh. 8a. This grievance was filed in December 2005 and also named Warden Lafler; the Grievance Coordinator indicated he was refused a Step II appeal because he requested one in an untimely manner. Plaintiff attempted to resolve the issue informally on March 23, 2006. On April 5, 2006, he received a response to this informal appeal, and was told he could not file a Step II appeal. He then filed this formal grievance the following day. He filed a timely Step II appeal when his grievance was rejected, and finally filed a Step III appeal.

A prisoner may appeal alleged violations of prison policy, including the grievance procedures. PD § E. Plaintiff believed that Defendant Jackson violated the grievance procedures. Plaintiff complied with the grievance process requirements.

52. <u>STF 06-04-0339-17A</u>: On April 2, 2006, Plaintiff filed this grievance complaining that on March 31, 2006, Defendant Thompson harassed him by calling him to a meeting and then denying Plaintiff access to participate in Jewish services. Pl. Exh. 17A. Plaintiff took his grievance through the three steps, but it was ultimately denied for being a duplicate of STF 06-03-0320-20A, STF 06-03-00322-28A, and STF-06-04-00334-28A. Those grievances concern his removal from the Jewish service list; this grievance complains of harassment following his removal from the call-out list. It thus is not a duplicate, and should not have been dismissed.

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that the Defendants' motion be

**GRANTED IN PART** and Plaintiff's complaint be **DISMISSED IN PART** for failure to exhaust his

administrative remedies pursuant to 42 U.S.C §1997e. Plaintiff can proceed against the following

Defendants on the noted grievances, and all other Defendants should be dismissed from this case:

- SPR 05-1010-00487-16D: Defendant Fighter
- STF 06-03-0320-20A and STF 06-04-0339-17A: Defendant Thompson
- STF 06-03-0257-17Z: Defendant Grahek
- STF 06-03-0323-12E and STF 06-03-0324-12Z: The Medical Defendants, Marble, Kearney, Isaacs, Hutchinson and Corrective Medical Services, Inc.
- STF 06-03-0295-12E: Defendant Orth
- STF 06-04-0358-27Z: Defendants Jackson and Lafler

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections on or before September 6, 2007, as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d

947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity, will not preserve all the objections a party might have to this report and

recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR

72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court. The response shall

address specifically, and in the same order raised, each issue contained within the objections. A

party may file a reply brief within 5 days of service of a response. The reply shall be not more

than five (5) pages in length unless by motion and order such page limit is extended by the Court.


Dated: August 16, 2007                                    s/ Steven D. Pepe_____
Flint, Michigan                                           United States Magistrate Judge

### Certificate of Service

I hereby certify on August 16, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:Christine M. Campbell, Kimberley A. Koester , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:Richard Boone, II, #409976, Deerfield Correctional Facility, 1755 Harwood Rd., Ionia, MI 48846


                                                          s/ James P. Peltier
                                                          Courtroom Deputy Clerk
                                                          U.S. District Court
                                                          600 Church St.
                                                          Flint, MI 48502
                                                          810-341-7850