UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BOONE, II,

    Plaintiff,                      CIVIL ACTION NO. 06-14415

    v.                            DISTRICT JUDGE DENISE PAGE HOOD

TERI FIGHTER, DR. LOUANNE       MAGISTRATE JUDGE MARK A. RANDON
DICK, NURSE GRAHECK, MEDICAL
SERVICE ADVISORY COMMISSION,
BILLY RAY THOMPSON, JANE DOE
1-7, AND JOHN DOE 1-7,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT THE MOTIONS
FOR SUMMARY JUDGMENT OF DEFENDANTS FIGHTER, GRAHEK
AND THOMPSON (DKT. NOS. 183, 185 AND 191)**

**I. INTRODUCTION**

Plaintiff, Richard Boone II ("Boone"), is currently in the Wayne County Jail facing robbery charges unrelated to this lawsuit. On November 14, 2006, while a Michigan state prisoner, Boone filed this 42 U.S.C.§ 1983 action, *pro se*, alleging that 56 named defendants and another 14 "John Doe" and "Jane Doe" defendants violated his rights under the United States Constitution, including: deliberate indifference to his medical problems, refusal to allow him to practice his religion and retaliation. Currently, only three defendants remain: Mary Grahek, a Registered Nurse ("Nurse Grahek"); Teri Fighter, an Assistant Resident Unit Supervisor

- 1 -

("ARUS Fighter"); and Billy Thompson, a Prison Chaplin ("Chaplin Thompson") (collectively "the Remaining Defendants").[1]

Before the Court are three separate motions for summary judgment filed by the Remaining Defendants in December of 2009. (Dkt Nos. 183, 185 and 191) Boone was ordered to respond to these motions but failed to do so. (Dkt. Nos. 184, 190 and 192) On February 5, 2010, Michelle LaBarge-Boone, who claimed to be the husband of Boone, submitted a letter to the Court. (Dkt. No. 195) Mrs. Boone's letter sought a "1-year extension" in the case because Boone was in the Wayne County Jail suffering from a "serious leg injury" and "marked memory problems" due to head and neck trauma. The letter did not identify the name of a treating physician, or refer to or provide any documentation which could substantiate the necessity of the request. Nevertheless, the time for Boone to respond to the Remaining Defendants' motions was extended until May 28, 2010 (providing Boone a minimum of five months to respond to each motion). (Dkt. No. 196) To date, however, Boone has yet to respond to any of the three motions.[2] Notwithstanding this lack of opposition, for the reasons set forth below, all three motions are well-taken and it is **RECOMMENDED** that they be **GRANTED.** It is **FURTHER**

---

[1] Defendants Dr. Louanne Dick and the "Medical Service Advisory Commission" have not been served. Nor does it appear that Boone was able to identify and serve some or all of the John and Jane Doe defendants. A recommendation as to these defendants unserved defendants is also set forth below. All other defendants have been dismissed.

[2] Boone apparently did submit a hand-written notice of address change, which was filed on May 12, 2010 (more than two weeks before the due date of his responsive pleadings). (Dkt. No. 197)

**RECOMMENDED** that any unnamed and unserved defendant be dismissed and Boone's lawsuit **DISMISSED WITH PREJUDICE**.

## II.  BACKGROUND

Boone's claims against the Remaining Defendants arise from allegations related to his incarceration at the Mid-Michigan Correctional Facility ("STF") and the Pine River Correctional Facility ("SPR"), between 2005 and 2006. Specifically, Boone alleges that: (A) ARUS Fighter included inaccurate information in his Parole Eligibility Report ("PER"), in 2005, in violation of the Fourteenth Amendment and the Freedom of Information Act ("FOIA"); (B) Nurse Graheck acted with deliberate indifference to his serious medical needs, on March 14, 2006, in violation of his Eighth Amendment rights; and (C) Chaplain Thompson excluded him from a Jewish service for two or three weeks in March and April of 2006, in violation his rights under the First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Michigan Constitution.

### A.  *Facts Relevant to Boone's Claims Against ARUS Fighter*

On August 11, 2005, Boone alleges that he spoke to ARUS Fighter about his PER. As Boone's ARUS, it was Fighter's job to prepare his PER. At the time, Boone was serving a sentence following conviction on charges of First Degree Home Invasion and Armed Robbery. During these crimes, Boone's accomplice, Timothy Murrell, raped a 77-year-old woman. A jury convicted Murrell of First Degree Criminal Sexual Conduct as well as First Degree Home Invasion and Armed Robbery. ARUS Fighter referenced Murrell's actions in her description of

Boone's offense on the PER (Dkt. No. 183, Ex. 2). Although the information was factually accurate, Boone took exception to ARUS Fighter's decision to include the reference to Murrell's behavior in the PER. According to Boone, after discussing the issue with him, ARUS Fighter indicated she was not going to change what she said on the PER.

Boone alleges he spoke with ARUS Fighter a second time about his PER some time on September 6, 2005 (Dkt. No. 7, ¶ 1). Boone further alleges that, during this discussion, he referred ARUS Fighter to his Pre-Sentence Investigation, which indicated that Boone was elsewhere in the victim's home when the rape occurred. *Id.* Once again, however, ARUS Fighter refused to change her description of the offense. Boone filed a grievance regarding his PER (Dkt. No. 183, Ex. 3), which the Michigan Department of Corrections ("MDOC") denied at all three steps.

Boone appeared before the Parole Board on November 7, 2005. James Quinlan conducted Boone's parole hearing. The Parole Board denied Boone parole on December 1, 2005 (Dkt. No. 183, Ex. 4). The Parole Board interviewed Boone again in December 2006. The Parole Board denied Boone parole a second time.

Finally, the Parole Board interviewed Boone in May 2008. This time the Parole Board granted Boone parole. The MDOC released Boone on parole on October 9, 2008 but, less than two weeks after his release, Boone allegedly robbed Mr. Z's Party Store in Northville Township. Boone is currently incarcerated at the Wayne County Jail facing robbery charges stemming from this incident.

### B. Facts Relevant to Boone's Claims Against Nurse Grahek

On March 14, 2006, Boone was seen by Nurse Grahek for complaints of back and hip pain (Dkt. No. 185, Ex. 3). Nurse Grahek claims she told Boone that she could not prescribe anything for him and that he would have to wait for a Medical Service Provider ("MSP"). An MSP is either a physician or a physician's assistant. According to Nurse Grahek, Boone became so belligerent that she asked him to leave the clinic.

In his deposition, Boone claimed that Nurse Grahek told him that all of his problems were because he was overweight (Dkt. No. 185, Ex. 4, p. 56). Boone also claimed in his deposition that Grahek caused him to have sleepless nights and heartburn and that she should not have diagnosed his problems. *Id*. at 58-59.

Physician's Assistant John Kearney saw Boone on March 16, 2006, regarding his hip and back pain (Dkt. No. 185, Ex. 5). Kearney evaluated Boone and prescribed medication to treat Boone's complaints.

### C. Facts Relevant to Boone's Claims Against Chaplain Thompson

On March 21, 2006, Boone alleges that he notified Chaplain Thompson and others that he needed their assistance to organize a Passover feast (a traditional Jewish event) (Dkt. No. 7, ¶ 47). The next day Boone claims Chaplain Thompson informed him that he could no longer attend the Messianic Jewish service – which Chaplain Thompson deemed a Protestant service, because Messianic Jews believe Jesus Christ is the Messiah – unless Boone changed his religious preference to Protestant. *Id*. Boone alleges he refused to change his religious preference and was removed from the Thursday night services he attended. *Id.*

Boone filed grievance number STF-06-03-0032-20A (Dkt. No. 191, Ex. 3) challenging his removal from the Thursday night service he attended. Boone appealed his removal from the Thursday night service through all three steps of the grievance process. In response to the grievance, Chaplain Thompson indicated on April 4, 2006, that the Thursday night service that Boone attended was a Protestant service, which happened to be taught by a Rabbi. MDOC Policy Directive ("PD") 05.03.150, ¶ T (Dkt. No. 191, Ex. 2, C) only permits prisoners to belong to one religious group at a time. Chaplain Thompson claims that Boone indicated on March 22, 2006 that he wanted to change his religious preference to Judaism and was, therefore, informed he could no longer attend Protestant services.

Boone subsequently filed grievance number STF-06-04-00339-17A (Dkt. No. 191, Ex. 4) alleging that Chaplain Thompson retaliated against him by removing him from the Thursday night services. On April 10, 2006, Chaplain Thompson responded by indicating that the Thursday night service that Boone attended was not a Jewish service. Additionally, he indicated there were not a sufficient number of Jewish prisoners, per MDOC PD 05.03.150 ¶ Y, to justify a Jewish service. Finally, Chaplain Thompson indicated that he changed the Thursday night service to be an all faith service and that Boone could attend the all faith service on April 9, 2006. In the interim period, Boone did not attend religious services for about two to three weeks (Dkt. No. 191, Ex.1, p. 75). Thereafter, Boone attended the all faith service, until he left STF on May 9, 2006. *Id.*

## III. ANALYSIS

### A. *Standard of Review*

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

*Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)).

**B.** ***The Effect of Boone's Failure to Respond to Defendants' Motions for Summary Judgment***

United States District Court for the Eastern District of Michigan Local Rule 7.1(b) states that "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available." "[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991)..

As previously mentioned, the Remaining Defendants filed the instant motions for summary judgment in December of 2009. Since that time, Boone has been ordered to respond on two occasions and both times he failed to comply. Therefore, the Remaining Defendants' motions may be deemed unopposed. *Humphrey v. U.S. Attorney Gen's Office*, 279 Fed.Appx. 328 (6th Cir. 2008). Notwithstanding the lack of opposition, Defendants motions are still well-taken in light of the analysis set forth below.

**C**. ***Boone's Claims Against ARUS Fighter Should be Dismissed***

"Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the Plaintiff's clearly established constitutional rights." *Jones v. Byrnes*, No. 08-1889 at * 4 (6th Cir. Nov. 9, 2009). When ruling upon the issue of qualified immunity, the Court must consider two threshold questions:

(1) Taken in the light most favorable to the nonmoving party, do the facts alleged show the officer's conduct violated a constitutional right? If, so, then;

(2) Was the violated constitutional right clearly established under law so as to place a reasonable officer on notice that his conduct would be unlawful in the situation he confronted?

*See Saucier v. Katz*, 533 U.S. 194 (2001); relying upon *Anderson v. Creighton*, 483 U.S. 635 (1987); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); and *Wilson v. Laid*, 526 U.S. 603, 615 (1999). Although *Saucier* mandated a determination of these questions in sequential order, courts are no longer required to do so. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009).

Boone cannot show a violation of a constitutional right. The Supreme Court has held that prisoners do not have a liberty interest in being released before the expiration of their sentence. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). The presence of a parole system, by itself, does not give rise to an interest in parole. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles inmates to release. *Inmates of Orient Correctional Institute v Ohio State Adult Parole Authority*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), the Sixth Circuit held that the State of Michigan did not create a liberty interest in parole. Additionally, the Michigan Supreme Court held in *Glover v. Michigan Parole Board*, 460 Mich. 511 (1999) that inmates do not have a liberty interest in parole. Since Boone has no liberty interest in being paroled, he cannot demonstrate that ARUS Fighter's conduct violated a constitutional right. Therefore, ARUS Fighter is entitled to qualified immunity.

### 1. Claims Filed Under 5 USC§ 552 do not Apply to State Agencies

Boone also alleges that ARUS Fighter violated his rights under the federal FOIA, 5 U.S.C. § 552.[3] Boone references 5 U.S.C. § 552 in Count I of his Amended Complaint (Dkt. No. 7, p. 4) but refers to the statute as the Privacy Act, not FOIA. Nevertheless, the definition of the agencies subject to FOIA does not include state-government agencies. *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 484 (2nd Cir. 1999) ("Section 551(1) of the Administrative Procedure Act ("APA"), of which FOIA is a subsection, defines agency as 'each authority of the Government of the United States'. . . Section 552(F) of FOIA incorporates the definition of 'agency' contained in section 551(1) of the APA by reference."). FOIA, thus, applies only to federal, not state agencies. Therefore, Fighter is entitled to dismissal of Boone's FOIA claim.

ARUS Fighter's remaining arguments are also well-taken but are rendered moot because of his immunity from being sued in this matter.

### D. *Boone's Claims Against Nurse Grahek Should be Dismissed*

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a claim for violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference,

---

[3] Boone's Amended Complaint makes no reference to Michigan's FOIA, M.C.L.A. 15.231.

Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that the plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference requires more than simple medical malpractice, and has been described as "an unnecessary and wanton infliction of pain" or that which is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06.

In this case, Boone claims that Nurse Grahek's inaction caused a two-day delay in his treatment for back and hip pain, and she should not have diagnosed his problems as stemming from him being overweight (thereby implicitly suggesting that Boone's problems would be alleviated if he lost weight). However, the Sixth Circuit has held that "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir., 2001). Boone has not made this showing. Moreover, where, as here, the prisoner has recieved some medical

attention and the dispute is over the adequacy of treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Boone has also failed to establish that Nurse Grahek disregarded a serious risk of substantial harm to him. Accordingly, Boone's claims against Nurse Grahek should be dismissed.

### *E. Boone's Claims Against Chaplain Thompson Should be Dismissed*

Chaplin Thompson is also entitled to qualified immunity as to Boone's First and Fourteenth Amendment claims regarding Boone's removal from the Thursday services. Although the services were taught by a Messianic Jew, they were Protestant in nature and, as such, Chaplain Thompson (following PD 05.03.150, ¶ T) had good reason to exclude Boone – who had last declared his religion to be Judaism. The prison's policy of not having Jewish services was also reasonable in light of the apparent lack of interest from prisoners. Indeed, the Sixth Circuit has "consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services." *Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010); s*ee also, Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir. 1999) (concluding that a prison's requirement that a minimum of five inmates of a particular faith must be interested in forming a faith group before the prison will provide for religious services has a "valid, rational connection to legitimate government interests in maintaining security and allocating prison resources.") Notwithstanding this reasonable policy, Chaplain Thompson permitted Boone to exercise his faith by attending the all-faith services.

As to Boone's RLUPIA claim, the Sixth Circuit has recently held that monetary damages are not available under RLUIPA. *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he

Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."), petition for cert. filed, 78 U.S.L.W. 3065 (U.S. July 22, 2009) (No. 09-109). Thus, the only relief available to Boone under the RLUIPA is injunctive and declaratory. Boone's amended complaint sought such relief. However, these forms of relief are moot because Boone's allegations are specific to STF and SPR regarding the Remaining Defendants – yet Boone is no longer housed at these facilities, or any other MDOC facility. *Colvin*, 605 F.3d at 289; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding that a prisoner's request for injunctive relief from prison inspection of his mail was moot because he had been transferred to a different facility that did not search his mail).

Chaplain Thompson's remaining arguments are also well-taken but are rendered moot because of his immunity from being sued in this matter.

### F.     *The Unserved and Unnamed Defendants Should be Dismissed*

Finally, as to the remaining John Doe and Jane Doe defendants, it is recommended that they be dismissed. In general, "the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F.Supp.2d 1085, 1093 (W.D. Mich. 2001). "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422, *2 (E.D. Mich. Aug.23, 2007), citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D. Mass. 1994). Under Fed. R. Civ. P. 4(m), defendants must be served within 120 days of filing the complaint. Here, Plaintiff has failed to identify or serve the John and Jane Doe defendants and this case has

been pending for over 120 days (since November of 2006); thus, although it is typically recommended that unnamed defendants be dismissed without prejudice, in this instance the dismissal should be with prejudice as the statute of limitations has run. *Mackall v. Doe*, No. 05-60083-AA, 2005 WL 1843449, *1 (E.D. Mich. July 29, 2005), citing *Awdish v. Pappas*, 159 F.Supp.2d 672, 673, n. 1 (E.D. Mich. 2001), and *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001). This Report and Recommendation will serve as notice to Plaintiff under Rule 4(m).

## IV. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that the Remaining Defendants' motions for summary judgment (Dkt. Nos.183, 185 and 191) be **GRANTED**. It is further **RECOMMENDED** that the John and Jane Doe Defendants be dismissed and Boone's lawsuit **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon  
MARK A. RANDON  
UNITED STATES MAGISTRATE JUDGE

Dated:  July 23, 2010

## Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 23, 2010, by electronic and/or ordinary mail.  Plaintiff's copy of the Report and Recommendation was mailed to the following addresses: Richard W. Boone II, #30959, 570 Clinton, Detroit, MI 48226; and c/o Michelle LaBarge-Boone, 4437 Julivan Ave. SE, Kentwood, MI 49548.

S/Barbara M. Radke  
Judicial Assistant